Ross Day, OSB #002395
Day Law, P.C.
P.O. Box 30148
Portland, Oregon 97294
ross@daylawpc.com
T:(503) 747-2705
F:(503) 914-1892
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MISTY FOX**, an individual,

    Plaintiff

    v.

**COLUMBIA COUNTY**, a political subdivision of the state of Oregon, **TCB SECURITY SERVICES, INCORPORATED**, an Oregon domestic corporation, **BUTCH GUESS**, an individual, **DAVID PEABODY**, in his official and individual capacities, **SHAWN MCQUIDDY**, in his individual and official capacities, **BRIAN PIXLEY,** in his official and individual capacities,

    Defendants.

Case No.: 3:20-cv-1154

COMPLAINT

(Violation of Civil Rights, 42 U.S.C. §1983; Violations of the United States Constitution and Oregon Constitution; Retaliation; Intentional Infliction of Emotional Distress)

AMOUNT IN CONTROVERSY: $100,000.00

DEMAND FOR JURY TRIAL

Plaintiff **MISTY FOX** alleges as follows:

## **THE PARTIES**

1.

Plaintiff, **MISTY FOX,** is an individual who resides in Lane County, Oregon. Except as otherwise stated herein, at all relevant times, Plaintiff Misty Fox (herein "Fox") was a

resident of Columbia County.

2.

Defendant, **COLUMBIA COUNTY,** is a political subdivision of the state of Oregon (herein "Columbia County").

3.

Defendant, **TCB SECURITY SERVICES, INC.,** is Oregon domestic corporation (herein "TCB"). TCB's principal business location is South Beach, county of Lincoln, Oregon. On information and belief, TCB provides security services for businesses and events across the state of Oregon.

4.

Defendant, **BUTCH GUESS,** is an individual who, on information and belief, lives in Columbia County, Oregon (herein "Guess").

5.

Defendant, **DAVID PEABODY,** was, at all relevant times, a deputy sheriff under the employ of the Columbia County Sheriff's Department (herein "Peabody").

6.

Defendant, **SHAWN MCQUIDDY,** was, at all relevant times, a deputy sheriff under the employ of the Columbia County Sheriff's Department (herein "McQuiddy").

7.

Defendant, **BRIAN PIXLEY,** was, at all relevant times, a deputy sheriff under the employ of the Columbia County Sheriff's Department (herein "Pixley").

8.

References to "Defendants" contained herein shall refer to all named defendants. References to "Sheriff Defendants" shall refer to Defendants Pixley, McQuiddy and Peabody.

## **VENUE AND JURISDICTION**

9.

This case presents claims against the Defendants pursuant to 42 U.S.C. §1983, in addition to state law claims. Accordingly, this Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental claim jurisdiction).

10.

The acts giving rise to the claims presented in this complaint occurred in Columbia County, Oregon. Accordingly, venue is appropriate in this Court.

## **GENERAL ALLEGATIONS**

11.

On or about July 21, 2018 at 10:30 a.m., Fox entered the Columbia County Fairgrounds (hereinafter "Fairgrounds") with her family to enjoy the Columbia County Fair (herein "Fair").

12.

The Fairgrounds are public property, as that term is defined in Oregon law, owned by Columbia County.

13.

The Fair takes place on the Fairgrounds. The Fair is open to the public and in all relevant respects resembles a typical county fair.

14.

The Fair and the Fairgrounds are operated by the Columbia County Fair Board (herein "Fair Board"). Members of the Fair Board are appointed to the Fair Board by Columbia County's Board of Commissioners. At all relevant times, Guess was the president of the Fair Board. At all relevant times, Guess was also the next-door neighbor of Fox and Fox's family.

15.

Fox is licensed to carry a firearm under Oregon's concealed handgun license laws, ORS 166.291 *et. seq.*

16.

On or about July 21, 2018 at 8:30 p.m., Fox was approached by two employees of TCB and asked if Fox was carrying a firearm. Fox did not answer the question.

17.

As Fox walked away from TCB's employees, Fox was confronted and detained by two deputies from the Columbia County Sheriff's department – Defendants McQuiddy and Peabody.

18.

At no time, either before, during or after the confrontation initiated by Defendants McQuiddy and Peabody, was Fox disruptive, loud, obnoxious or disorderly. At no time during the confrontation initiated by Defendants McQuiddy and Peabody did Fox interfere in any manner with the conduct or operation of the Fair.

19.

Defendants McQuiddy and Peabody demanded Fox provide her concealed handgun

license. Fox complied with Defendants McQuiddy and Peabody's request and provided a copy of her concealed handgun license to Defendants McQuiddy and Peabody.

20.

Defendants McQuiddy and Peabody made it clear through their statements, conduct, and demeanor that Fox was not allowed to leave their presence. In all material respects, Fox was detained by Defendants McQuiddy and Peabody and was not free to leave.

21.

While being detained by Defendants McQuiddy and Peabody, Deputy McQuiddy told Fox to wait until a supervisor arrived.

22.

While waiting for contact with a supervisor, Defendants McQuiddy and Peabody demonstrated discernible disdain and disrespect for Fox. In fact, Defendant McQuiddy went so far as to allege Fox had an "agenda" in coming to the Fair with her firearm.

23.

Defendant McQuiddy's allegations demonstrate a clear animus towards Fox and the rights guaranteed by the United States Constitution, the Oregon Constitution and Oregon statute.

24.

In fact, the only "agenda" Fox has on July 21st, 2018, was to attend the Fair with her family and enjoy the Fair with her family, especially her grandchildren.

25.

On information and belief, Defendants McQuiddy and Peabody contacted Defendant Pixley, who claimed that Fox was not allowed to be on the Fairgrounds with her firearm.

26.

On information and belief, Defendant Pixley instructed Defendants McQuiddy and Peabody to remove Fox from the Fairgrounds.

27.

There was no lawful basis for the Sheriff's Defendants to remove Fox from the Fairgrounds.

28.

Defendant Peabody then gave Fox two choices: leave the Fairgrounds or secure the firearm in Fox's car.

29.

Fox told the Sheriff Defendants that she had a right to carry her firearm on her person under the United States Constitution, the Oregon Constitution, and Oregon statute.

30.

Fox's pleas fell on deaf ears. The Sheriff Defendants refused to consider whether Fox, in fact, had a right to be on the Fairgrounds with her firearm. Defendant Peabody then told Fox he would escort Fox off of the Fairgrounds.

31.

Fox protested as she was escorted out of the Fairgrounds by the Sheriff Defendants.

32.

Defendant Peabody told Fox that if she continued to protest while Fox was being removed from the Fairgrounds against her will, while asserting her constitutional and statutory rights, that Defendant Peabody would arrest Fox for disorderly conduct.

33.

Fox was forced to leave the Fairgrounds against her will by the Sheriff Defendants.

34.

After being forced to leave the Fairgrounds by the Sheriff Defendants, Fox was approached by Defendant Guess.

35.

Defendant Guess told Fox the Fairgrounds are not public property.

36.

Defendant Guess told Fox he, and he alone, had the authority to determine whether firearms could be present on the Fairgrounds.

37.

Defendant Guess told Fox that he instructed the employees of TCB and the Sheriff Defendants to remove Fox from the Fairgrounds. Defendant Guess told Fox he instructed employees of TCB and the Sheriff Defendants to remove Fox from the Fairgrounds because Fox refused Defendant Guess' unlawful demands.

38.

Defendant Guess instructed the Sheriff Defendants to charge Fox with criminal trespass if Fox did not leave the Fairgrounds.

39.

Defendant Peabody then told Fox she would be arrested for first-degree trespass with a firearm if she returned to the Fairgrounds. Defendant Peabody told Fox that if she continued to protest her treatment by Defendant Guess and the Sheriff Defendants, disorderly conduct.

40.

At all relevant times, Defendant TCB, Defendant Columbia County, the Sheriff Defendants, and Defendant Guess were acting under color of law.

41.

Following this encounter, Fox went to the Columbia County Sheriff's Office with the intent to file a complaint regarding the conduct of the Sheriff Defendants. Fox was told a complaint was unnecessary and a letter from the Columbia County Sheriff would be forthcoming.

42.

On or about July 24, 2018, the Columbia County Sheriff sent Fox a letter acknowledging that the actions of the Sheriff Defendants were unlawful and apologizing for the Sheriff Defendants' conduct. A copy of the letter is attached as Exhibit A and incorporated as if fully set forth herein.

43.

On October 3rd, 2018, Fox provided notice required by ORS 30.275 of the Fox's intention to seek a claim for damages against all Defendants based upon the conduct described above.

**FIRST CLAIM FOR RELIEF**
**(Violations of the Civil Rights Act – 42 U.S.C. §1983)**

**COUNT I**
**U.S. Const. Second Amendment**
**Right to Bear Arms**
**(Against All Defendants)**

44.

Plaintiff reallege and incorporates the allegations contained in paragraphs 1 through

43 as if fully set forth herein.

45.

The Second Amendment to the United States Constitution grants the right to bear arms to all citizens of the United States. That right is solidified in Article I, Section 27 of the Oregon Constitution and ORS 166.291 *et seq.*

46.

The Defendants, each of them individually and collectively, infringed on Fox's constitutionally protected right to keep and bear arms by forcing Fox to choose between exercising her constitutionally protected right, or staying on the Fairgrounds with her family.

47.

The actions of the Defendants violate Fox's constitutionally and statutorily protected rights.

48.

The actions of the Defendants occurred in plain view of the public, and worse in plain view of Fox's family, including her grandchildren. Fox was treated as if she were a criminal, when in fact Fox was simply exercising her constitutional rights. This cause Fox public shame and humiliation that no American should have to endure for simply exercising their rights.

49.

At all times all Defendants were acting under color of law.

50.

Defendant Columbia County, by and through the Columbia County Sheriff, has admitted the conduct of the Sheriff Defendants violated Fox's constitutional rights.

51.

As a result of the Defendants' conduct described herein, Fox has been damaged in the amount of $250,000.00, or an amount to be proven at trial.

52.

Pursuant to 42 U.S.C. §1988, the Fox is entitled to an award of her costs, disbursements and reasonable attorney fees.

**COUNT II**
**U.S. Const. First Amendment**
**(Against Sheriff Defendants)**

53.

Fox realleges and incorporate the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

54.

While the Sheriff Defendants were unlawfully detaining Fox, and later forcing Fox to leave the Fairgrounds, Fox protested her treatment by the Sheriff Defendants.

55.

Fox's protest of her treatment by the Sheriff Defendants is core, fundamental speech protected by the First Amendment to the United States Constitution.

56.

In response to Fox's protests, the Sheriff Defendants threatened Fox with arrest and additional persecution in violation of Fox's First Amendment right to freedom of speech.

57.

At all times all Defendants were acting under color of law.

58.

The conduct of the Sheriff Defendants could not be a more clear example of a violation of Fox's basic civil right to freedom of speech.

59.

The actions of the Sheriff Defendants occurred in plain view of the public, and worse in plain view of Fox's family, including her grandchildren. Fox was treated as if she were a criminal, when in fact Fox was simply exercising her constitutional rights. This cause Fox public shame and humiliation that no American should have to endure for simply exercising their rights.

60.

As a result of the Sheriff Defendants' conduct described herein, Fox has been damaged in the amount of $250,000.00, or an amount to be proven at trial.

61.

Pursuant to 42 U.S.C. §1988, the Fox is entitled to an award of her costs, disbursements and reasonable attorney fees.

**COUNT III**
**U.S. Const. Fourteenth Amendment**
**Violation of Due Process**
**(Against All Defendants)**

62.

Fox realleges and incorporates the allegations contained in paragraphs 1 through 43, 45 through 50, and 54 through 58 as if fully set forth herein.

63.

Defendants never provided Fox with any process whatsoever before Defendants deprived Fox of Fox's most basic civil rights. Defendants never provided Fox with any

notice, any opportunity to defend herself against the Defendants' actions, an impartial decision-maker, or any post-deprivation procedures whatsoever.

64.

The actions taken by the Defendants were taken with the intent to deprive Fox of her basic civil rights guaranteed by the United States and Oregon Constitutions.

65.

Defendants' actions described throughout this Complaint violated Fox's most basic rights to procedural due process in violation of the United States Constitution.

66.

At all times all Defendants were acting under color of law.

67.

As a result of the Defendants' conduct described herein, Fox has been damaged in the amount of $250,000.00, or an amount to be proven at trial.

68.

Pursuant to 42 U.S.C. §1988, the Fox is entitled to an award of her costs, disbursements and reasonable attorney fees.

## COUNT IV
### U.S. Const. Fourteenth Amendment
### Equal Protection of the Laws
### (Against all Defendants)

69.

Fox realleges and incorporates the allegations contained in paragraphs 1 through 43, 45 through 50, and 54 through 58 as if fully set forth herein.

70.

While Fox was removed from the Fairgrounds for carrying a firearm pursuant to

Oregon's concealed weapon laws, other attendees of the Fair were not removed.

71.

While other persons attending the Fair were exercising their First Amendment freedoms of speech and expression, they were not subjected to threats of arrest as Fox was.

72.

The Defendants' actions described throughout this Complaint treated Fox differently than other similarly situated persons and/or companies who conducted themselves in an exact or similar manner as Fox at the Fairgrounds, during the Fair. The Defendants, for no legitimate reason whatsoever, treated Fox differently, in violation of Fox's right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

73.

At all times all Defendants were acting under color of law.

74.

As a result of the Defendants' conduct described herein, Fox has been damaged in the amount of $250,000.00, or an amount to be proven at trial.

75.

Pursuant to 42 U.S.C. §1988, the Fox is entitled to an award of her costs, disbursements and reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress)**
**(Against All Defendants)**

76.

Fox realleges and incorporates the allegations contained in paragraphs 1 through 43,

45 through 50, and 54 through 58 as if fully set forth herein.

77.

Defendants' actions, described above, were intentional and intended to cause severe emotional distress to Fox. In the alternative, the Defendants were acting as agents of the government with all the power and authority that comes with his position, and acted in a manner that was certain or substantially certain to result in severe emotional distress to Fox.

78.

The Defendants' actions, in fact, caused severe emotional distress to Fox.

79.

The Defendants' conduct described above far exceeds any limit of socially tolerable behavior. At a county fair, which Fox was attending with her children and grandchildren, the Defendants singled out Fox for unequal treatment, causing her shame and embarrassment. The Defendants treated Fox as if she were a common criminal, when, in fact, Fox had committed no crime. As Fox was detained, harassed and interrogated by the Defendants, and in particular the Sheriff Defendants, Fox was the target of unwanted and unwelcome attention by those attending the Fair. Fox did absolutely nothing to bring this unwanted attention. The Defendants, each of them, acted in such a way that they knew would cause shame and embarrassment to Fox.

80.

The Defendants, any one of them, could have stopped the persecution of Fox, but not a single person stepped in to do the right thing. Instead, each Defendant continued to harass, intimidate, and bully Fox into complying with their unreasonable and unlawful commands.

81.

The severe emotional distress suffered by Fox is a reasonably foreseeable consequence of the outrageous conduct of the Defendants.

82.

As a result of the individual Defendants' conduct, Fox was harmed in the amount of $250,000.00, or an amount to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully pray this Court for the following relief

1. On Plaintiffs' First Claim For Relief, Count I, for a judgment against all Defendants in the amount of $250,000.00, or an amount to be proven at trial;

2. On Plaintiffs' First Claim For Relief, Count II, for a judgment against all Defendants in the amount of $250,000.00, or an amount to be proven at trial;

3. On Plaintiffs' First Claim For Relief, Count III, for a judgment against all Defendants in the amount of $250,000.00, or an amount to be proven at trial;

4. On Plaintiffs' First Claim For Relief, Count IV, for a judgment against all Defendants in the amount of $250,000.00, or an amount to be proven at trial;.

5. On Plaintiffs' Second Claim For Relief, for a judgment against all Defendants in the amount of $250,000.00, or an amount to be proven at trial;

6. Plaintiffs costs, disbursements and reasonable attorney fees pursuant to 42 U.S.C. §1988.

7. Any other relief the Court deems just and equitable.

**RESPECTFULLY SUBMITTED** this ___ day of July 2020

                                             **DAY LAW, PC**
                                             *Attorneys for Plaintiff*

/s/ Ross Day
Ross A. Day, OSB #002395
P.O. Box 30148
Portland, Oregon 97294
T: 503-747-2705
E: ross@daylawpc.com